UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

JUDGE LEISURE

----------------------------------------X    08 CV 3984

SUSQUEHANNA BANK

               Plaintiff       :

                    :

       v.             :

JAMES S. MCGOWN

             Defendant   :

----------------------------------------X



**COMPLAINT**

Civ. Action No.:

RECEIVED
APR 28 2008
U.S.D.C. S.D. N.Y.
CASHIERS

       Susquehanna Bank ("Susquehanna"), by and through its attorneys. McCarter & English

LLP, by way of complaint for breach of contract against James S. McGown, alleges as follows:

### THE PARTIES

       1.     Plaintiff Susquehanna is a banking company with a principal place of business at

307 International Circle, Suite 600, Hunt Valley, Maryland.

       2.     Defendant James S. McGown ("McGown") is an individual residing at 109 Reade

Street, New York, New York.

### JURISDICTION

       3.     Jurisdiction is proper pursuant to 28 U.S.C. §1332 because the plaintiff and the

defendant are citizens of different states and the matter in controversy exceeds the sum or value

of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

       4.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §

1391(a)(1).

## BACKGROUND

5.    On or about June 19, 2003, McGown executed a Marine Promissory Note (the "Note") for repayment of the principal amount of $216,000 due to Susquehanna. A true copy of the Note is attached hereto as Exhibit A.

6.    On or about June 19, 2003, McGown executed a Marine Security Agreement, granting Susquehanna a security interest in the vessel "Sta. Helena" (the "Vessel"). A copy of the Marine Security Agreement is attached hereto as Exhibit B.

7.    On or about June 17, 2003, McGown, a mortgagor, executed a First Preferred Ship Mortgage on the whole (100%) of the vessel known as "Sta. Helena" in favor of Susquehanna as mortgagee. A copy of the First Preferred Ship Mortgage is attached hereto as Exhibit C. Together the Note, the Marine Security Agreement and the First Preferred Ship Mortgage are referred as the Loan Documents.

8.    The First Preferred Ship Mortgage was duly recorded with the U.S. Coast Guard's National Vessel Documentation Center.

9.    Pursuant to the First Preferred Ship Mortgage and the Marine Security Agreement, McGown agreed not to remove the Vessel from its home port of anchorage at the World Financial Marina, in New York City which also served as the winter storage location for the Vessel.

10.    Upon information and belief, the Vessel is not moored at the agreed location in the Loan Documents.

11.    McGown defaulted on the Note by, among other things, failing to make his monthly payments due after September 2007.

12.    On or about December 3, 2007, Susquehanna sent McGown a Notice of Default, demanding prompt payment of all amounts owed.

13.    McGown made no payment to cure his defaults.

14.    Pursuant to the terms of the Note, Susquehanna is entitled to attorneys' fees as part of this action to collect on amounts due under the Note.

## COUNT I
## (BREACH OF CONTRACT)

15.    Susquehanna repeats and realleges the allegations of all the preceding paragraphs in this Complaint as if fully set forth in this paragraph.

16.    McGown breached the terms of the Note by, among other things, failing to pay to Susquehanna the monthly installments due after September 2007.

17.    Susquehanna has been harmed as a result of McGown's breach.

WHEREFORE, Susquehanna demands that judgment be entered against McGown in the principal amount of $190,417.13, plus interest, costs of collection, attorneys' fees and any other sums that the Court may deem proper and fair.

## COUNT II
## (EQUITABLE RELIEF)

18.    Susquehanna repeats and realleges the allegations of all the preceding paragraphs as if fully set forth in this paragraph.

19.    Pursuant to the Loan Documents, upon a default, Susquehanna has the right to demand that McGown assemble and deliver the Vessel at such location as Susquehanna may reasonably require.

20.    Upon information and belief, the Vessel is not currently at its contractually agreed moorings and its location is unknown to Susquehanna.

WHEREFORE, Susquehanna demands that judgment be entered against McGown directing him to (1) return the Vessel to its contractually agreed mooring at the World Financial

3

Center Marina in New York, New York and to (2) appear for a deposition to reveal the current

location of the Vessel.

MCCARTER & ENGLISH, LLP
Attorneys for Susquehanna Bank

By: _____

Eduardo J. Glas, Esq.
A member of the Firm
245 Park Avenue
New York, New York 10167
212-609-6800

4

# EXHIBIT A

# MARINE PROMISSORY NOTE

**Made as of the June 19, 2003**                                   **Amount of Loan $216,000.00**

In this Marine Promissory Note, the words **"Borrower"** and **"Borrower's"** refer to each and every person (individuals, partners, trustees, limited liability companies or corporations or other entities) who signs this Marine Promissory Note as Borrower and the personal representatives, successors and assigns of Borrower. The words **"Lender"** and **"Lender's"** mean the party to whom payment is to be made hereunder or any other holder to whom this Note may be assigned.

**BORROWER:**          James S. McGown

**ADDRESS:**           109 Reade Street
                       New York, NY 10013

**FOR VALUE RECEIVED,** Borrower, the undersigned, promises to pay U.S. $216,000.00, plus interest and any fees or other expenses as stated below, to the order of Susquehanna Bank, its successors and/or assigns ("Lender") as provided in the payment schedule set forth below. If more than one person signs this Note as Borrower, each such person agrees that his or its obligations under this Note shall be joint and several. Borrower agrees that Lender may assign this Note, including its right to receive Borrower's payments, to another party.

1. **APPLICATION OF PAYMENTS:** Each payment will be applied to the satisfaction of scheduled payments in the order in which they become due. Individual payments shall be applied first to charges, expenses or fees under this Note, then to charges, expenses or fees under the Marine Security Agreement or First Preferred Ship Mortgage by which the Note is secured, then to interest, and finally to principal.

2. **INTEREST:** Borrower will pay interest beginning on June 19, 2003. Interest will be computed daily by applying the interest rate or rates to the outstanding principal balance until Borrower actually pays. Any adjustment resulting from payments received on days other than the days Borrower is scheduled to pay will be reflected in the final installment. Interest will continue to accrue at the rate or rates of interest as set forth in this Note on the unpaid principal balance after maturity until fully paid, or until Lender obtains a judgment against Borrower and is required by law to charge a different rate.

____X____  **FIXED:** Borrower will pay interest which will accrue daily on Borrower's unpaid balance at the fixed simple interest rate of 5.50% per year.

_____  **VARIABLE:** Borrower will pay interest at the variable simple interest rate described below which will accrue daily on Borrower's unpaid balance. The simple interest rate on this Note may change quarterly, in the first day of each of the following months: March, June, September and December. Each date on which the interest rate could change is called a "Change Date". Beginning with the first Change Date, the interest rate will be based on an "Index". The Index is the Prime Rate as published in the "Money Rates" section of *The Wall Street Journal* on the business day two weeks immediately prior to the Change Date. The Index is available to Borrower and verifiable by Borrower. In the event that the Prime Rate is published as a range of rates, the highest such rate published will be used as the Index. Lender reserves the right to verify and correct any printing errors regarding the Index.

Before any Change Date, Lender will calculate Borrower's new interest rate by adding _(N/A)_ % (the "Spread") to the current Index. Borrower will pay interest at the new interest rate until the next Change Date. In no event will the interest rate exceed 24% per year.

In the event the Index or a substitute index shall cease to be published or is substantially altered, Lender may at its own discretion, choose another index not controlled by Lender that Lender believes to be comparable to the then current index. In the event of a substitution of one index for another, the Spread also may be adjusted so that there is no increase in the Annual Percentage Rate on Borrower's account due solely to the substitution.

The initial simple interest rate is _(N/A)_ % per year. This initial rate is an introductory rate and will be in effect through _(N/A)_. Thereafter, the rate will be tied to the Index. Borrower understands that if the initial rate had been tied to the Index, Borrower's initial rate would have been _(N/A)_ %, instead of the rate shown above.

Borrower understands that Borrower's regular payment amount may increase or decrease if Borrower's interest rate changes. Borrower's payments will not change more often than once every three months. If the interest rate decreases, a smaller final payment or fewer monthly payments, or both may be required. If the interest rate increases, a larger final payment or more monthly payments, or both may be required.

3. **PAYMENT SCHEDULE:** Borrower will pay principal and interest payments according to the following schedule:

| Number of Payments | Amount of Payments | First Payment Due Date |
|---|---|---|
| 240 | $1,485.84 | July 19, 2003 |

4. **OTHER CHARGES:** If a payment is not received within 15 days after it is due, Borrower agrees to pay $25.00 or 5% of the payment, whichever is more. If any payment is made with a check that is dishonored on the second presentment, Borrower agrees to

Page 1 of 3

pay a returned check fee of $15.00 or the applicable Lender charges, whichever is greater. Borrower will also pay certain other charges, expenses, and fees, as provided in the Marine Security Agreement or Preferred Ship Mortgage by which this Note is secured.

**5. PREPAYMENT:** Borrower may prepay this Note in full at any time without penalty. In that event, because interest has not been precomputed, Borrower will not be entitled to any refund of any prepaid or other finance charge.

**6. SECURITY:** To provide Lender collateral security to protect Lender if Borrower defaults on Borrower's loan, Borrower will execute and deliver to Lender a Marine Security Agreement and/or a First Preferred Ship Mortgage (the "Security Instruments") covering the collateral vessel (the "Vessel") described in the Security Instruments:

C.G.#:            HIN#: BEY79128D303          Vessel Name: STA. HELENA
Vessel Description: 2003 Beneteau 473

**7. LENDER'S EXPENSES:** To the extent that the following charges are actually incurred by Lender in making this loan, Borrower agrees to pay these Lender expenses: (1) attorney's fees for services rendered in preparation of loan documents, closing the loan, or disbursement of loan proceeds; (2) any expense, tax or charge paid to any governmental or regulatory agency; (3) cost of any examination survey, appraisal, or the performance of other services necessary or appropriate to ensure the value, validity, and perfection of Lender's security interest or mortgage lien in the Vessel which secures Borrower's obligations under this Note; (4) cost for registration of the Vessel in the state of its principal use and perfection of a security interest in Lender's favor under the laws of the appropriate state; (5) costs of documentation of the Vessel under the laws of the United States and the preparation, filing, and recordation of a First Preferred Ship Mortgage on the Vessel in Lender's favor with the U.S. Coast Guard; and (6) costs of perfection of a security interest in Lender's favor in any collateral security other than the Vessel. The total amount of these expenses incurred by Lender are (N/A). These costs are due and payable on the date of this Note.

**8. DEFAULT:** Borrower shall be in default under this Note if (1) Borrower does not pay the full amount of each monthly payment on or before its due date; or (2) Borrower breaches any warranty, promise or agreement Borrower has made in, or Borrower is otherwise in default under, this Note, the Security instruments, or any other instrument or security agreement made by Borrower in Lender's favor effective now or in the future; or (3) Borrower dies or becomes incompetent or otherwise unable to make timely payments of any sum due under this Note or any of the Security Instruments; or (4) Borrower becomes insolvent; or (5) any receivership, insolvency or similar proceedings, or any assignment for the benefit of creditors, shall be instituted by or against Borrower.

**9. LENDER'S REMEDIES:** If Borrower is in default under this Note, Lender may do any one or more of the following with or without prior notice to Borrower or demand for performance, except as may be required under applicable law: (1) require that Borrower immediately pay the full unpaid balance under this Note; (2) enforce Lender's rights under an one or more of the Security Instruments; (3) bring suit to recover judgment for any and all amounts due and owing under this Note, or any of the Security Instruments; (4) refer this Note to an attorney for collection and collect from Borrower a reasonable attorney's fee; (5) require Borrower to pay all costs of collection, enforcement and court costs, including costs and expenses recoverable under any of the Security Instruments, to the extent permitted by law; and (6) set off Borrower's liability against any funds of Borrower held by Lender in an account of general deposit or other personal property of Borrower's held by Lender other than IRA accounts or Keogh pension plan accounts.

**10. REASONABLE ATTORNEY'S FEES:** Whenever under this Note or any of the Security Instruments, Lender is entitled to payment by Borrower of Lender's reasonable attorney's fees incurred to enforce Lender's collection rights against Borrower , it shall be presumed that 15% of the full amount owed under this Note and the Security Instruments shall be a reasonable attorney's fee unless otherwise required by applicable law.

**11. JOINT OBLIGORS:** If more than one Borrower signs this Note, each Borrower is fully, personally, and unconditionally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Lender may enforce its rights under this Note against each such Borrower individually and against all of the Borrowers together. Any one of the Borrowers may be required to pay all of the amounts owed under this Note.

**12. NO WAIVER:** Lender may delay in enforcing or may fail to enforce a default under this Note without losing its right to subsequently enforce a default. Even if Lender does not enforce a default at one time, Lender may enforce it at a later time. Lender's rights and remedies under this Note are cumulative and the exercise by Lender of one right or remedy shall not bar or preclude subsequent exercise of the same or other rights and remedies. No waiver by Lender of any of its rights will be effective unless in writing and signed by Lender

**13. PRESENTMENT AND NOTICE OF DISHONOR:** Borrower waives all Borrower's rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require Lender to give notice that amounts due have not been paid.

**14. GOVERNING LAW:** This Note is made under Subtitle 10 of Title 12 of the Commercial Law Article of the Annotated Code of Maryland and will be governed by and construed in accordance with the internal laws of the state of Maryland and, to the extent that federal law preempts the laws of Maryland, by the laws of the United States.

**15. MISCELLANEOUS:** Time is of the essence of this Note. All payments must be paid on the date due. No amendment of this Note will be valid unless in writing and signed by both Lender and Borrower. If any provision of this Note cannot be enforced, the rest of this Note will remain in effect as though the unenforceable provision had never been included. All of Lender's rights shall inure to the benefit of Lender's successors and assigns and any and all of Borrower's obligations, promises and agreements shall bind borrower's heirs, executors, administrators, successors and assigns.

Borrower acknowledges receipt of a completely filled-in copy of this Note before signing it. AS OF THE DAY and year written at the beginning of this Note, Borrower has executed this Note under seal, or if a corporation, caused this Note to be executed in the corporate name and sealed (if a corporate seal has been adopted) by its corporate officers or agents who were duly authorized to do so on behalf of the corporation, or if a partnership, caused this Note to be executed under seal by all of its general partners duly authorized on behalf of the partnership and their own behalf, individually, or if a trust, caused this Note to be executed under seal by all of its trustees on behalf of the trust pursuant to authority granted by the trust.


DATE: June 19, 2003
BORROWER(S)


_____          _____
James S. McGown

### Co-Signer and/or Guarantor Notice

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower does not repay the debt, you may have to. Be sure you can afford to pay the debt if you have to, and that you want to accept this responsibility. You may have to pay the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record. This notice is not the contract that makes you liable for the debt.


Acknowledged by Co-Signer: _____

Acknowledged by Guarantor:_____

Acknowledged by Guarantor:_____

# EXHIBIT B

# MARINE SECURITY AGREEMENT

**made as of June 19, 2003, on the VESSEL "STA. HELENA"**

| | |
|---|---|
| **GRANTOR(S)** | James S. McGown |
| **ADDRESS:** | 109 Reade Street |
| | New York, NY 10013 |

| | |
|---|---|
| **SECURED PARTY:** | Susquehanna Bank, its successors and/or assigns |
| | 100 West Road, |
| | Baltimore, MD 21204 |

In this Agreement the word "Grantor" means each and every person (individuals, partners, trustees, limited liability companies, or corporations) who signs this Agreement as Grantor, and where applicable, any Other Owner. If more than one person or entity signs this Agreement as Grantor, each of the signers, separately, individually and jointly, is responsible for paying the full amount of the Debt. The word "Secured Party" means Susquehanna Bank, its successors and/or assigns or any other holder to whom this Agreement may be assigned.

**IDENTIFICATION OF VESSEL:** Name of Vessel: STA. HELENA
**O.N.#:**       **HIN#:** BEY79128D303    **Homeport:** NVDC      **State of Principal Use:** New York
**New/Used:** New **Year:** 2003    **Builder:** Beneteau        **Model:** 473
**Gross Tons:**     **Net Tons:**      **LOA:** 46'11"   **Hull Material:** Fiberglass    **Year Built:** 2003
**Engine Year:** 2003   **Manufacturer:** Westerbeke      **H.P.:** Single 63     **Type:** Diesel Engine **No(s):**     C48444
**Summer Mooring:** World Financial Marina  New York, NY
**Winter Storage:** World Financial Marina  New York, NY
**Optional Equipment Included:**
**VESSEL USE (Check appropriate box(es) below):**
☒ **Pleasure Use Only**     ☐ **Principal Dwelling**       ☐ **Bareboat Charter Only**       ☐ **Commercial**

**SECURED OBLIGATION:** This Agreement secures: (a) Grantor's obligations now due or which may become due in the future to Secured Party under this Agreement and under a Marine Promissory Note now held by Secured Party dated June 19, 2003 and such other note, promissory note, or debt instrument which Grantor executes and which is intended to be secured by this Agreement (all hereinafter the "Note") requiring monthly payments of principal, interest, costs, charges, expenses and fees (the "Debt"), which Note is given by Grantor as borrower to Secured Party to be secured by this Agreement.

**PROMISE TO PAY:** Grantor will pay the Debt and perform all representations, warranties and promises as stated in this Agreement or the Note.

**PAYMENT SCHEDULE:** Grantor will pay the principal and interest on the Debt in an amount sufficient to amortize the principal balance of the loan over a 240 month period with such payments beginning on July 19, 2003 and ending on June 19, 2023 and one final payment of the remaining principal balance plus accrued interest due on June 19, 2023 plus all costs, charges, expenses, and fees related to the Note.

**MULTIPLE GRANTORS:** If more than one person or entity signs this Agreement as Grantor, each such person and entity, separately, individually and jointly, is responsible for paying the full amount of the Debt and doing everything required of Grantor. Secured Party may require any one co-Grantor to pay the entire amount of the Debt without notifying or requiring payment from any other person. Secured Party may, but does not commit to, at any time or from time to time, give one Grantor extensions to pay or change or release without or herein responsibility without releasing any co-Grantor or without treating any co-Grantor in the same way. Grantor's obligation to pay is absolute and unconditional.

**OTHER OWNER:** Each person who signs this agreement as an Other Owner does not thereby become personally liable on the Instrument or for the Debt, but each Other Owner does make all of the other warranties and promises of the Grantor herein. Secured Party may make any accommodations with regard to the terms of this Agreement and the Note without notifying or obtaining the consent of such Other Owner without releasing such Other Owner or modifying this Agreement as to that Other Owner's interest in the Vessel.

**CONVEYANCE OF SECURITY:** In consideration of Secured Party's extension of credit and to secure the Debt, and subject to the terms and conditions contained in this Agreement, and with the understanding that such extension of credit would not have been granted without this Agreement as security, Grantor hereby grants and conveys to Secured Party a security interest in: (a) the Vessel, together with all masts, cables, engines, machinery, sails, rigging, auxiliary boats, anchors, chains, tackle, spare parts, apparel, furniture, fittings, fixtures, tools, pumps, equipment and supplies, radar and other electronic equipment, and all fishing equipment and other attachments, accessions, appurtenances, accessories, additions, improvements, replacements, substitutions, supplies and necessaries of all kinds, affixed to or now used in or on the Vessel, or which may be used in or on the Vessel in the future, whether or not removed from the Vessel, (b) all freights, charter hire, earnings, income, revenue, profits and proceeds of sale or lease of the Vessel, or proceeds of requisition of title to the Vessel by governmental authority, if any, insurance claim payments and returned or unearned premiums, whether in the form of cash or any other property, derived from the Vessel and (c) any and all of Grantor's funds or property on deposit with or held by Secured Party (except for any funds in any IRA, Keogh or other retirement account). If, however, Grantor is not a corporation and the Vessel is purchased primarily for Grantor's non-business use, the security interest under

this agreement shall not cover any items acquired by Grantor more than ten (10) days after the date of the Note unless they are installed in or affixed to the Vessel.

## TERMS AND CONDITIONS

1. **FEDERAL DOCUMENTATION:** If the Vessel is subject to documentation under the laws of the United States in Grantor's name, Grantor agrees that the Vessel will be documented in Grantor's name and that a First Preferred Ship Mortgage on the Vessel in Secured Party's favor will be filed and recorded with the U.S. Coast Guard. Grantor agrees to cooperate in regard to and pay all costs of federal documentation and filing and recording the First Preferred Ship Mortgage on Vessel in Secured Party's favor. In addition, Secured Party may require that Grantor register the Vessel with the appropriate authority in the state of principal use of the Vessel as specified above and that Secured Party's security interest be perfected under state law, whether through the filing of a financing statement, or notation on a certificate of title, or both. Grantor agrees to cooperate in regard to and pay all costs of registration of the Vessel and perfection of Secured Party's security interest under state law. Grantor also agrees to pay all applicable taxes and fees due and owing under the laws of any state with respect to the Vessel, its purchase and use, including but not limited to the state of the Vessel's principal use.

2. **GOOD STANDING OR CORPORATE GRANTOR, PARTNERSHIP, TRUST:** If this Agreement is given by a corporation, Grantor represents and warrants that Grantor is properly incorporated and validly exists under the laws of the state of Grantor's incorporation and Grantor will continue in good standing under the laws of the state of Grantor's incorporation and Grantor will continue to be qualified to do business (if required to do so by applicable law) in every state in which Grantor does business until this Agreement is fully paid and performed. If this Agreement is given by a partnership or a trust, Grantor shall not, without Secured Party's prior written permission, add or remove any partners, amend the partnership agreement or dissolve the partnership, add or remove any trustees, or amend the trust agreement or revoke the trust, until this Agreement is fully paid and performed. Grantor shall not, without 30 days prior written notice to the Secured Party, change Grantor's name, identity, or ownership. Grantor represents and warrants that the execution, delivery, and performance of the Agreement by Grantor, on Grantor's behalf is duly authorized by all necessary corporate or partnership action or by all trustees, as appropriate, and does not contravene any articles of incorporation, bylaws, agreements, or trusts, as they may apply to Grantor.

3. **LIENS:** Grantor warrants that at the date of this Agreement, the Vessel is free from all prior liens and encumbrances except for the lien created in Secured Party's favor to secure the Debt. Neither Grantor nor anyone else has or shall have any authority to create, incur, or permit to be placed on the Vessel or any part thereof any lien whatsoever, including any maritime lien, other than to Secured Party, or for crew's wages, or for salvage. Grantor shall post such notice on the Vessel and Grantor shall otherwise give such notice to that effect at such time(s) as Secured Party may reasonably require. If any maritime lien on the Vessel arises or is claimed, Grantor agrees that Grantor will, within 30 days from inception of the lien claim, satisfy the lien claim or post adequate security to release the Vessel from the lien claim.

4. **TITLE WARRANTY:** Grantor represents and warrants that Grantor lawfully owns the whole (100%) of the Vessel. Grantor is responsible for the Secured Party's expenses and losses if anyone other than Grantor or the Secured Party claims an interest in the Vessel or any part of it.

5. **RISK OF LOSS, INSURANCE:** (a) At all times, Grantor bears the risk of damage to, theft, destruction or other loss of the Vessel. Damage, theft, destruction, or other loss of the Vessel will not release Grantor from Grantor's obligations to Secured Party. Grantor agrees to let Secured Party know as soon as possible, and in any event within 48 hours, if the Vessel becomes damaged, is stolen or destroyed, or disappears. (b) Until this Agreement is fully paid and performed, Grantor agrees to maintain in full force and effect fire, theft, and "all risk" marine hull and machinery and protection and indemnity insurance on the Vessel, and such other insurance covering such risks and perils, upon such terms and in such amount and with such endorsements as Secured Party may reasonably require. In addition to protecting Grantor, the insurance must protect Secured Party as a loss payee and as an additional insured (without liability for payment of premium) and must be written for at least one year at a time. The amount of Grantor's marine hull and machinery insurance shall not be less than the market value of the Vessel or the unpaid amount of the Debt, whichever is greater (except as otherwise restricted by law). The underwriter and maximum deductible on Grantor's insurance must be reasonably satisfactory to Secured Party. (c) Secured Party may sign any proof of loss and endorse any check, draft, or other form of payment issued by the insurance company or its agent as a loss payment and Grantor hereby appoints Secured Party as Grantor's attorney-in-fact for this purpose. This power of attorney shall not be affected by Grantor's disability. Proceeds of the insurance may be used either to repair the Vessel or to reduce the Debt, in Secured Party's discretion. (d) If Grantor's insurance lapses or is canceled at any time before this Agreement is fully paid and performed, Secured Party must be given prompt notice of said lapse or cancellation. In the event of lapse or cancellation, or in the event of Grantor's failure to pay any premiums when due or otherwise to provide or maintain insurance coverage, Secured Party may, but is not obligated to, buy replacement coverage protecting Grantor and Secured Party, or Secured Party alone.

6. **USE OF VESSEL:** Grantor promises that at no time prior to payment of the Debt in full will Grantor use the Vessel for any commercial purpose, as Grantor's principal dwelling, or for bareboat charter without Secured Party's express prior written consent. Unless Grantor is in default under this Agreement and Secured Party exercises any of Secured Party's remedies upon default, Grantor will be permitted to retain actual possession and use of the Vessel. The Vessel may be operated only for pleasure, unless Secured Party otherwise agrees in writing. The Vessel may be operated only within the geographical limits and other requirements of the marine insurance covering the Vessel. Grantor shall not dispose of or transfer the Vessel or any part of Grantor's interest in the Vessel,

Page 2 of 5

without Secured Party's prior written permission. Grantor shall not use, nor allow the use of, the Vessel for any illegal purpose or contrary to any provision of the laws, treaties, regulations or orders of the United States or other jurisdictions in which the Vessel is operated. The illegal commerce in, or possession, carriage, or use of, any firearms or controlled substance whatsoever on or about the Vessel is absolutely prohibited.

**7. CHANGES OF LOCATION:** Except for voyages from which Grantor intends to return, Grantor shall not, without Secured Party's prior written approval, move the Vessel from the place(s) where it is customarily moored in summer or stored in winter, as the case may be, or change the State in which the Vessel is principally used. Grantor shall inform Secured Party within 30 days of any change in Grantor's residence or place of business.

**8. DUTY TO MAINTAIN VESSEL:** Grantor agrees to keep the Vessel in good condition and repair at all times. Grantor shall not, without Secured Party's prior written consent, make any substantial change or alteration in the Vessel, its structure, rigging, or engines.

**9. DUTY TO PAY VESSEL EXPENSES:** Grantor agrees to pay when due all lawful repair bills, storage bills, dockage charges, taxes, fines, or other charges with respect to the Vessel, its purchase or use. Secured Party may, but does not commit to, pay any of these bills or charges if Grantor does not.

**10. SEIZURE OF VESSEL:** Grantor shall notify Secured Party promptly, and in any event within 48 hours, by telephone, confirmed by telegraph, cable or facsimile, if the Vessel is arrested, libeled, attached, detained, seized or levied upon or taken into custody, or if Grantor becomes aware that any claim of lien upon the Vessel has been filed or prosecuted. Grantor shall immediately take steps to have the Vessel released or take such other steps as Secured Party may reasonably require, including posting bond or security for the Vessel. In the event the Vessel is seized, arrested, or detained by any government authority, Grantor authorizes Secured Party to disclose any information which Secured Party deems necessary to protect Secured Party's interest in the Vessel and Grantor further authorizes Secured Party or Secured Party's agents in Grantor name and as Grantor attorney in fact to (i) receive or take possession of the Vessel, (ii) defend any action and/or discharge any lien, and (iii) refer the protection of the Secured Party's interest to an attorney not a salaried employee of Secured Party and receive from Grantor reasonable attorneys fees. This power of attorney shall not be affected by Grantor's disability.

**11. INSPECTION OF VESSEL AND BOOKS, REPORTS:** Grantor shall at all times let Secured Party inspect the Vessel and everything in it or on it and let Secured Party examine its cargoes and papers (including, but not limited to, any relevant certificate of title, license, certificate of documentation or other vessel document, ship mortgage and policy of insurance) and Grantor's related accounts, books and records.

**12. REIMBURSEMENT OF SECURED PARTY:** If Secured Party expends funds for any purpose under this Agreement (including for the purpose of exercising any of Secured Party's remedies) or the protection of Secured Party's interest in the Vessel, such as payment of taxes, insurance premiums, maintenance and repair of the Vessel, or discharge of any lien claim, arrest or seizure of the Vessel, such expenditure will be for Grantor's account and Grantor will repay Secured Party the full amount of such expenditure on demand, with interest at the highest rate applicable to the Debt, and all such unpaid amounts shall constitute an additional part of the Debt secured by this Agreement until paid in full. Secured Party is not obligated to make any such expenditure. Any such expenditure Secured Party may make will not cure Grantor's default or waive any of Secured Party's rights or remedies.

**13. FURTHER ASSURANCES:** From time to time Grantor shall sign and deliver to Secured Party any document and assurances, or complete any markings, that Secured Party may reasonably require to obtain and maintain a first priority security interest in and/or First Preferred Ship Mortgage lien on the Vessel, and to help Secured Party carry out a resale or other disposition of the Vessel in the event it becomes necessary for Secured Party to repossess the Vessel or to foreclose Secured Party's security interest or mortgage lien through judicial process. Grantor hereby appoints Secured Party as Grantor's attorney-in-fact for all of the foregoing purposes, and this power of attorney shall not be affected by Grantor's disability.

**14. DEFAULT:** Grantor shall be in default under this Agreement if, at any time, (1) any payment or any other sum is not paid when it is due under the Note or this Agreement; or (2) Grantor breaches any warranty, promise or agreement Grantor has made in this Agreement, the Note, or any other note or security agreement made by Grantor in Secured Party's favor effective now or in the future; or (3) Grantor dies or becomes incompetent or otherwise unable to make timely payments of any sum due under the Note or this Agreement; or (4) Grantor becomes insolvent; or (5) any receivership, insolvency or similar proceedings, or any assignment for the benefit of creditors, shall be instituted by or against Grantor; or (6) the Vessel is arrested, attached, levied upon, seized, or made the subject of any legal proceeding, or held by virtue of any lien or distress, or any notice of claim of lien on the Vessel is filed with the U.S. Coast Guard or any other applicable authority; or (7) any other event occurs that Secured Party in good faith believes endangers Grantor's ability to pay any sum due under the Note or this Agreement; or (8) any other event occurs that Secured Party in good faith believes jeopardizes or impairs the value of Secured Party's collateral for Grantor's obligation under this Agreement or Secured Party's ability to realize that value in a foreclosure.

**15. REMEDIES UPON DEFAULT:** If Grantor is in default under this Agreement and/or under the Note, Secured Party may do any one or more of the following with or without previous notice to Grantor or demand for performance, except as may be required by applicable law: (1) require that Grantor pay immediately the full unpaid balance of the Debt; (2) set off Grantor's liability against or foreclose any funds of Grantor's held by Secured Party in an account of general deposit or other personal property of Grantor's held by Secured Party other than IRA accounts, Keogh pension plan accounts or other retirement accounts; (3) demand that Grantor assemble and deliver the Vessel to Secured Party at such location as Secured Party may reasonably require (however, Grantor's delivery of the Vessel to Secured Party will not relieve Grantor of Grantor's obligation to satisfy any deficiency which may arise upon

subsequent sale or other disposition of the Vessel); (4) lawfully enter any premises where the Vessel may be located and repossess the Vessel, together with anything in or on the Vessel, with or without legal process or judicial decree and with or without previous notice or demand for performance; (5) sell or otherwise dispose of the Vessel; (6) bring suit at law, in equity, or in admiralty to foreclose Secured Party's security interest and/or recover judgment for any and all amounts due under the Note and this Agreement, and collect the same out of any and all property covered by this Agreement; (7) pursue any other remedy provided to Secured Party under any applicable law; (8) refer this Agreement to an attorney for collection or enforcement; (9) require Grantor to pay collection, enforcement and court costs, including but not limited to all actual and reasonable costs of foreclosure, enforcement and collection of any amount due and payable under this Agreement and/or the Note and all actual and reasonable costs and expenses of retaking, maintaining, repairing or rehabilitating, advertising, cleaning, storing or selling the Vessel, to the extent permitted by law. In the case of a judgment, interest on the unpaid balance of the judgment will be payable at the applicable judgment rate or, if permitted by law, at the interest rate applicable to the Debt, at Secured Party's discretion.

**16. RECOVERY OF PERSONAL BELONGINGS:** If this Agreement is enforced by nonjudicial repossession of the Vessel, Grantor may claim any of Grantor's personal belongings that were in or on the Vessel at the time of repossession only if Grantor sends Secured Party notice by registered mail of Grantor's intent to claim such belongings within 48 hours after repossession. Once Secured Party notifies Grantor by mail as to where these belongings may be called for, Grantor must pick them up within 30 days after receipt of said notice or Grantor will have no further claim to them. In any case, Secured Party shall not be liable for any such belongings or for any damage to them.

**17. DISPOSITION OF VESSEL; APPLICATION OF PROCEEDS:** (a) if Secured Party repossesses the Vessel without judicial process, Secured Party may, in Grantor's name or Secured Party's, at Secured Party's discretion, sell, lease, charter, operate or otherwise use the Vessel as Secured Party may deem advisable, without being responsible for loss or damage, and Secured Party may keep the Vessel at Grantor's premises or elsewhere, at Grantor's expense. For this purpose and subject to any applicable state regulation, Secured Party and Secured Party's agents are irrevocably appointed Grantor's true and lawful attorneys-in-fact to make all necessary transfers of the Vessel, to pay, defend or obtain the release of all maritime liens, and to take all related actions in Grantor's name and stead as may be necessary and appropriate to enforce Secured Party's rights under this Agreement or the Note. This power of attorney shall not be affected by Grantor's disability. (b) The proceeds of sale or other disposition of the Vessel shall be applied in accordance with applicable law. To the extent permitted by applicable law, any late charges, costs of retaking the Vessel, storage, costs of sale including, but not limited to, cleaning, repairing and/or maintenance expenses, auctioneer's fee, sales commission, if any, and advertising, insurance, allowable attorney's fees, collection costs, court costs, and any other necessary expenses will be paid first from the proceeds of the sale or other disposition of the Vessel. Any surplus of proceeds of sale or disposition of the Vessel over the amounts of such charges and expenses and amounts owed to Secured Party shall be paid to Grantor to the extent that such surplus is not required by law to be paid to other persons with liens on the Vessel; Grantor shall be liable for any deficiency.

**18. RECEIVER:** In any legal action, Secured Party may have a receiver appointed for the Vessel and its earnings. Any receiver shall have full rights and powers to use and operate the Vessel pending its disposition and to obtain a court decree ordering and directing the sale or other disposition of the Vessel.

**19. REASONABLE ATTORNEY'S FEES:** Whenever under this Agreement or the Note Secured Party is entitled to payment by Grantor of Secured Party's reasonable attorney's fees incurred to enforce Secured Party's collection rights against Grantor, it shall be presumed that 15% of the full amount owed under the Note and this Agreement shall be a reasonable attorney's fee unless otherwise required by applicable law.

**20. NO WAIVER:** Secured Party may delay in enforcing or fail to enforce any of Secured Party's rights without waiving Secured Party's right to enforce such rights or any other rights at a later time. Secured Party's rights and remedies under this Agreement are cumulative and not exclusive. No action that Secured Party takes to protect Secured Party's interest under this Agreement or the Note shall cure any default by Grantor under this Mortgage or the Note, nor shall it prohibit Secured Party from declaring Grantor's Debt immediately due and payable. No waiver by Secured Party of any of Secured Party's rights will be effective unless in writing and signed by Secured Party.

**21. TIME IS OF THE ESSENCE:** Time is of the essence in this Agreement.

**22. VALIDITY, AMENDMENT:** If any provision of this Agreement cannot be enforced, the rest of this Agreement will remain in effect as though the unenforceable provision had never been included. No amendment of this Agreement will be valid unless in writing and signed by both Grantor and Secured Party.

**23. ASSIGNMENT:** This Agreement may be assigned by Secured Party at any time without prior notice to Grantor. If this Agreement is assigned, Grantor's rights and obligations under this Agreement will be transferred with it. After any assignment, Secured Party shall have no responsibility to Grantor under this Agreement; but Secured Party shall keep all rights and powers not so assigned.

**24. NOTICE:** Any notice required or permitted to be given hereunder shall be deemed properly given: (a) upon delivery, if delivered in person or by overnight courier; or (b) three (3) days after mailing by first-class or certified mail, postage prepaid, to each party at the address for each party specified at the beginning of this Agreement, or to such other address as either party may designate by written notice given to the other.

**25. GOVERNING LAW:** This Agreement will be governed by and construed in accordance with the internal laws of the State of Maryland and, to the extent that federal law preempts the laws of Maryland, by the laws of the United States, provided, further, that

the parties elect that this loan is made under Subtitle 10 of Title 12 of the Commercial Law Article of the Annotated Code of Maryland and federal law.

26. ENTIRE AGREEMENT: This Agreement, together with the Note and any related papers, is the entire agreement between Secured Party and Grantor. There are no oral representations, warranties or agreements between Secured Party and Grantor.

## GRANTOR GRANTS SECURED PARTY THE SECURITY INTEREST DESCRIBED ABOVE AND AGREES TO THE TERMS AND CONDITIONS OF THIS AGREEMENT.

Grantor acknowledges a completely filled-in copy of this Agreement before signing it. As of the day and year written at the beginning of this Agreement, Grantor has executed this Agreement under seal, or if a corporation, caused this Agreement to be executed in the corporate name and sealed (if a corporate seal has been adopted) by its corporate officers or agents who were duly authorized to do so on behalf of the corporation, or if by a partnership, caused this Agreement to be executed under seal by all of its general partners duly authorized on behalf of the partnership and their own behalf, individually, or if a trust, caused this Agreement to be executed under seal by all of its trustees on behalf of the trust pursuant to authority granted by the trust.

Date: June 19, 2003                                         GRANTOR(S)

_____                  _____
Witness:                                                         James S. McGown

_____                  _____
Witness:

THE FOLLOWING OTHER OWNER(S) JOIN IN GRANTING SECURED PARTY THE SECURITY INTERESTS DESCRIBED ABOVE AND AGREE TO THE TERMS AND CONDITIONS OF THIS AGREEMENT.

_____                  _____
OTHER OWNER #1:                                         OTHER OWNER #2:

# EXHIBIT C

Document Type: MORTGAGE
Batch Number: 101525
Document ID: 1017354
User ID: SCANNER4
Filed Date/Time: 11-JUL-2003 09:34 AM

10/10031286600

LIEN PERF. OCT 20 2003 CSO

## IP MORTGAGE
## SECURING A PROMISSORY NOTE

**This is a First Preferred Ship Mortgage on the whole (100%) of the vessel ("Vessel") known as: "STA. HELENA"**

**Dated: June 19, 2003**

**THE AMOUNT OF THIS MORTGAGE,** as required to be shown by the Ship Mortgage Act of 1920, as amended and recodified, is the Amount of Loan of $216,000.00 excluding interest, expenses and fees. This Mortgage also secures repayment of simple interest as it accrues, expenses and fees, as well as performance of the representations, warranties and promises contained in this Mortgage.

**PARTIES: Mortgagor(s): James S. McGown**
Sole Owner
109 Reade Street
New York, NY 10013

who, together with the Other Owners identified below, own the whole (100%) of the Vessel

**Other Owners:** N/A
N/A

**Mortgagee:** **Susquehanna Bank, its successors and/or assigns**
**100 West Road,**
**Baltimore, MD 21204**

RECEIVED OCT 21 2003 FILE AGENT

The words, "Mortgagor", and "Mortgagor's" mean each and every person (individuals, partners, trustees, limited liability companies or corporations or other entities) who signs this Mortgage as Mortgagor and, where applicable, any Other Owner and the personal representatives, successors and assigns of Mortgagor and any Other Owner. The words "Mortgagee" and "Mortgagee's" mean the Mortgagee and anyone who has Mortgagee's rights under this Mortgage.

**MULTIPLE MORTGAGORS:** If more than one Mortgagor signs this Mortgage, each Mortgagor, separately, individually and jointly is responsible to pay the entire amount owing and do everything required of Mortgagor, unless specifically stated otherwise below. Mortgagee may sue one Mortgagor without joining any co-Mortgagor. The obligation of each Mortgagor to pay is absolute and unconditional.

**MORTGAGE OBLIGATION:** This Mortgage secures Mortgagor's obligations now due or which may become due in the future to Mortgagee under this Mortgage and under a promissory note now held by Mortgagee dated June 19, 2003 and such other note, promissory note, or debt instrument which Mortgagor executes and which is intended to be secured by this Mortgage (all hereinafter the "Note") requiring monthly payments of principal, interest, costs, charges, expenses and fees ("Debt"), which Note is given by Mortgagor as borrower to Mortgagee to be secured by this Mortgage on the Vessel.

**PROMISE TO PAY:** Mortgagor will pay the Debt and perform all the obligations under this Mortgage and the Note.

**PAYMENT SCHEDULE:** Mortgagor will pay the principal and interest on the Debt in 240 monthly payments of $1,485.84 each beginning on July 19, 2003 and thereafter on the same day of each consecutive month with a final estimated payment of $1,485.84. Interest may accrue at a fixed or variable rate as provided in the Note. A more detailed description of Mortgagor's payment obligation is contained in the Note.

**MORTGAGE:** In consideration of Mortgagee's extension of credit and to secure the Debt, and subject to the terms and conditions of this Mortgage, Mortgagor hereby grants, mortgages, and conveys to Mortgagee the whole (100%) of the Vessel named and described in this Mortgage, to have and to hold the whole of the Vessel unto Mortgagee, Mortgagee's successors and assigns, for Mortgagee's use and benefit forever; provided that if Mortgagor repays the Debt and keeps all of the promises made in and secured by this Mortgage, then this Mortgage and the estate and rights hereby granted shall cease and be void. Mortgagor acknowledges and agrees that, in addition to this Mortgage, Mortgagee retains and reserves any other security interests or rights Mortgagor has granted Mortgagee, or may grant Mortgagee in the future, outside this Mortgage, for the purpose of securing the Debt. All freights, charter hire, earnings, income, revenue, profits and proceeds of sale or lease of the Vessel, or proceeds of requisition of title to the Vessel and insurance claim payments and returned or unearned premiums, whether in the form of cash or other property, derived from the Vessel are also hereby mortgaged, conveyed and assigned unto Mortgagee on the conditions and estates of this Mortgage.

**DESCRIPTION OF VESSEL: 2003 Beneteau 473** **Name: STA. HELENA**
**Official Number:** **Home Port: NVDC** **Gross Tons:** **Net Tons:** **Hull I.D. No.: BEY79128D303**

Together with masts, towers, boilers, cables, engines, machinery, bowsprits, sails, rigging, auxiliary boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, radar and other electronic or other equipment and supplies, and all fishing and other attachments and accessories, now forming part of the Vessel or used in or on the Vessel or which may become part of the Vessel in the future, whether or not removed from the Vessel (all called the "Vessel"). If Mortgagor is not a corporation and the Vessel was purchased primarily for Mortgagor's own non-business use, the lien of this Mortgage shall not cover any items added to the Vessel more than 10 days after the date of the Note that are not made a part of the Vessel.

Document Type: MORTGAGE
Batch Number: 101525
Document ID: 1017354
User ID: SCANNER4
Filed Date/Time: 11-JUL-2003 09:34 AM

claims for moneys which may be payable due to the actual, title or use, seizure, condemnation, confiscation, sequestration ership or use of the Vessel by act of any country or of any governmental authority or otherwise. Mortgagor also grants Mortgagee a security interest in all claims for damages or compensation with respect thereto and proceeds of all policies of insurance now or hereafter taken out in respect of the Vessel including all claims of whatsoever nature and return of premiums.

**CITIZENSHIP:** Mortgagor is, and shall continue to be, a citizen of the United States as required by the laws pertaining to the documentation and any trading privileges of the Vessel until this Mortgage is fully paid and performed.

**RIGHT TO OWN AND OPERATE:** The Vessel is documented in Mortgagor's name under the laws of the United States. Mortgagor owns the Vessel and shall continue to be entitled to own and operate the Vessel under her marine document. If this Mortgage is given by a corporation, the corporation is duly incorporated and exists in good standing under the laws of the state of its incorporation. Mortgagor represents and warrants that if the Vessel is documented with other than a recreational endorsement, it always shall be under the command of a citizen of the United States.

**MARINE DOCUMENT:** Mortgagor shall maintain the marine document of the Vessel in full force and effect.

**SIGNING, AUTHORIZATION AND VALIDITY:** Mortgagor, or, if this Mortgage is given by a corporation, the Board of Directors of the corporation, or if this Mortgage is given by a limited liability company, partnership or trust, the authorized member(s), partner(s) or trustee(s), have signed or authorized and directed the signing of all papers and taken all actions necessary for the signing and delivery of this Mortgage and the Note which created the Debt secured by this Mortgage. The Note and this Mortgage are valid and enforceable.

**GOOD STANDING OR CORPORATE GRANTOR, PARTNERSHIP, TRUST:** If this Mortgage is given by a corporation or a limited liability company, Mortgagor represents and warrants that Mortgagor is properly incorporated or organized and validly exists under the laws of the state of Mortgagor 's incorporation or organization, and Mortgagor will continue in good standing under the laws of the state of Mortgagor 's incorporation or organization, and Mortgagor will continue to be qualified to do business (if required to do so by applicable law) in every state in which Mortgagor does business until this Mortgage is fully paid and performed. If this Mortgage is given by a partnership or a trust, Mortgagor shall not, without Mortgagee's prior written permission, add or remove any partners, amend the partnership agreement or dissolve the partnership, add or remove any trustees, or amend the trust agreement or revoke the trust, until this Mortgage is fully paid and performed. Mortgagor shall not, without 30 days prior written notice to the Mortgagee, change Mortgagor's name, identity, or ownership. Mortgagor represents and warrants that the execution, delivery, and performance of this Mortgage by Mortgagor or on Mortgagor 's behalf is duly authorized by all necessary corporate or partnership action or by all trustees, as appropriate, and does not contravene any articles of incorporation or organization, bylaws, agreements, or trusts, as they may apply to Mortgagor.

**NO PRIOR LIENS:** Mortgagor warrants that at the date of this Mortgage, the Vessel is free from all prior liens and encumbrances except for the lien created in Mortgagee's favor to secure the Debt. Neither Mortgagor nor anyone else has or shall have any authority to create, incur, or permit to be placed on the Vessel or any part thereof any lien whatsoever, including any maritime lien, other than to Mortgagee, or for crew's wages, or for salvage. Mortgagor shall post such notice on the Vessel and Mortgagor shall otherwise give such notice to that effect at such time(s) as Mortgagee may reasonably require. If any maritime lien on the Vessel arises or is claimed, Mortgagor agrees that Mortgagor will, within 30 days from inception of the lien claim, satisfy the lien claim or post adequate security to release the Vessel from the lien claim. Mortgagor lawfully owns and has possession of the Vessel.

**TITLE WARRANTY:** Mortgagor represents and warrants that Mortgagor lawfully own the whole (100%) of the Vessel. This means that Mortgagor is responsible for Mortgagee's expenses or losses if anyone else successfully claims an interest in the Vessel or any part of it.

**RISK OF LOSS:** At all times Mortgagor bears the risk of damage to, theft, destruction or other loss of the Vessel. Damage, theft, destruction or other loss of the Vessel will not release Mortgagor from Mortgagor's obligations to Mortgagee. Mortgagor will let Mortgagee know as soon as Mortgagor can if the Vessel becomes damaged, is stolen or destroyed, or disappears.

**INSURANCE AND NOTICE OF LOSS:** Until Mortgagor has fully paid the Debt and fully performed the Mortgage, Mortgagor will maintain in full force and effect fire, theft, and "all risk" marine hull and machinery and protection and indemnity insurance on the Vessel, and such other insurance covering such risks and perils, upon such terms and in such amount and with such endorsements as Mortgagee may reasonably require. In addition to protecting Mortgagor, the insurance must protect Mortgagee as a loss payee and as an additional insured (without liability for payment of premium) and must be written for at least one year at a time. The amount of Mortgagor's marine hull and machinery insurance shall not be less than the market value of the Vessel or the unpaid amount of the Debt, whichever is greater (except as otherwise restricted by law). The underwriter and maximum deductible on Mortgagor's insurance must be reasonably satisfactory to Mortgagee. Mortgagee may sign any proof of loss and endorse any check, draft, or other form of payment issued by the insurance company or its agent as a loss payment and Mortgagor hereby appoints Mortgagee as Mortgagor's attorney-in-fact for this purpose. This power of attorney shall not be affected by Mortgagor's disability. Proceeds of the insurance may be used either to repair the Vessel or to reduce the Debt, in Mortgagee's discretion. If Mortgagor's insurance lapses or is canceled at any time before this Mortgage is fully paid and performed, Mortgagee must be given prompt notice of said lapse or cancellation. In the event of lapse or cancellation, or in the event of Mortgagor's failure to pay any premiums when due or otherwise to provide or maintain insurance coverage, Mortgagee may, but is not obligated to, buy replacement coverage protecting Mortgagor and Mortgagee, or Mortgagee alone. Mortgagor will repay the premiums at Mortgagee's request with interest at the rate in effect under the Note.

Page 2 of 5

Document Type: MORTGAGE
Batch Number: 101525
Document ID: 1017354
User ID: SCANNER4
Filed Date/Time: 11-JUL-2003 09:34 AM

...tly if Mortgagor changes Mortgagor's principal residence or ...ent of the Debt in full will Mortgagor use the Vessel for any commercial purpose, as Mortgagor's principal dwelling, or for bareboat charter without Mortgagee's express prior written consent. Unless Mortgagor is in default under this Agreement and Mortgagee exercises any of Mortgagee's remedies upon default, Mortgagor will be permitted to retain actual possession and use of the Vessel. The Vessel may be operated only for pleasure, unless Mortgagee otherwise agrees in writing. The Vessel may be operated only within the geographical limits and other requirements of the marine insurance covering the Vessel. Mortgagor shall not dispose of or transfer the Vessel or any part of Mortgagor's interest in the Vessel, without Mortgagee's prior written permission. Mortgagor shall not use, nor allow the use of, the Vessel for any illegal purpose or contrary to any provision of the laws, treaties, regulations or orders of the United States or other jurisdictions in which the Vessel is operated. The illegal commerce in, or possession, carriage, or use of, any firearms or controlled substance whatsoever on or about the Vessel is absolutely prohibited.

**LOCATION OF VESSEL:** Mortgagor will not, without Mortgagee's prior written approval, remove the Vessel from its home port or anchorage shown above (except for winter storage) other than for voyages with the intent of returning in less than six months. Mortgagor will inform Mortgagee of any different winter storage location. Mortgagor will not abandon the Vessel.

**DISPLAY OF MORTGAGE ON VESSEL:** Mortgagor will prominently display the marine document and a recorded copy of this Mortgage with the ship's papers in the pilot house, if any, chart room or master's cabin. Mortgagor will show them to all persons having business with the Vessel and to Mortgagee on demand.

**BILLS AND TAXES:** Mortgagor shall pay when due any lawful repair bills, storage bills, dockage charges, taxes, fines or other charges with respect to the Vessel, its purchase or use. Mortgagee may, but does not commit to, pay any of these bills if Mortgagor does not. If Mortgagee does pay any of these bills, Mortgagor will repay Mortgagee on demand, with interest at the rate in effect under the Note.

**CARE OF THE VESSEL:** Mortgagor will keep the Vessel in good condition and repair.

**SEIZURE:** Mortgagor will notify Mortgagee promptly by telephone confirmed by telegraph or cable if the Vessel is arrested, libeled, attached, detained, seized or levied upon or taken into custody by any court or other authority, or if Mortgagor becomes aware that any claim of lien upon the Vessel has been filed or prosecuted. Mortgagor will immediately take steps to have the Vessel released, or take such other steps as Mortgagee may reasonably require, including posting bond or security for the release. In the event the Vessel is seized, arrested or detained by any government authority, Mortgagor authorizes Mortgagee to disclose any information which Mortgagee deems necessary to protect Mortgagee's interest in the Vessel and Mortgagor further authorizes Mortgagee or Mortgagee's agents in Mortgagor's name and as Mortgagor's attorney in fact to (i) receive or take possession of the Vessel, and (ii) defend any action and/or discharge any lien, and (iii) refer the protection of the Mortgagee's interest to an attorney not a salaried employee of Mortgagee and receive from Mortgagor reasonable attorneys fees. This power of attorney shall not be affected by Mortgagor's disability.

**INSPECTION OF VESSEL AND BOOKS:** Mortgagor will at all times let Mortgagee inspect the Vessel and its cargoes and papers (including, but not limited to, any relevant certificate of title, license, certificate of documentation or other vessel document, ship mortgage and policy of insurance) and examine Mortgagor's related accounts and records. Mortgagor shall tell Mortgagee quarterly and, if Mortgagee requests, monthly, that all wages and all other claims which might have created a lien on the Vessel have been paid.

**REIMBURSEMENT OF SECURED PARTY:** If Mortgagee expends funds for any purpose under this Mortgage (including for the purpose of exercising any of Mortgagee's remedies) or the protection of Mortgagee's interest in the Vessel, such as payment of taxes, insurance premiums, maintenance and repair of the Vessel, or discharge of any lien claim, arrest or seizure of the Vessel, such expenditure will be for Mortgagor's account and Mortgagor will repay to Mortgagee the full amount of such expenditure on demand, with interest at the highest rate applicable to the Debt, and all such unpaid amounts shall constitute an additional part of the Debt secured by this Mortgage until paid in full. Mortgagee is not obligated to make any such expenditure. Any such expenditure Mortgagee may make will not cure Mortgagor's default or waive any of Mortgagee's rights or remedies.

**FURTHER ASSURANCES:** From time to time, Mortgagor shall sign and deliver to Mortgagee any documents and assurances, or complete any markings, that Mortgagee or Mortgagee's attorney may require to obtain and maintain the first priority of this Mortgage and to help Mortgagee carry out a resale or other disposition of the Vessel in the event it becomes necessary for Mortgagee to repossess it, or foreclose Mortgagee's mortgage lien through judicial process. Mortgagor hereby appoints Mortgagee as Mortgagor's attorney-in-fact for all of the foregoing purposes, and this power of attorney shall not be affected by Mortgagor's disability.

**FINANCIAL REPORTING:** If this Mortgage is given by a business entity, it will give Mortgagee any annual and other periodic financial reports that Mortgagee may reasonably request.

**DEFAULT:** Mortgagor will be in default if, at any time, Mortgagor (1) has made a false or misleading statement about any important fact in this Mortgage or in the related Note or application for credit approval; or (2) does not make any payment or pay any other sum when due under the Note or this Mortgage; or (3) breaches any warranty, promise or agreement Mortgagor has made in this Mortgage, the Note, or any other note or security agreement made by Mortgagor in Mortgagee's favor effective now or in the future; or (4) dies or becomes incompetent or otherwise unable to make timely payments of any sum due under the Note or this Mortgage; or (5) becomes insolvent, or (6) files for bankruptcy, receivership, insolvency or similar proceedings, or any assignment for the benefit of creditors, or similar relief, or creditors institute any such proceedings against Mortgagor; or if (7) the Vessel is arrested, attached, levied upon, seized, or made the subject of any legal proceeding, or held by virtue of any lien or distress, or any notice of claim of lien

Page 3 of 5

Document Type: MORTGAGE
Batch Number: 101525
Document ID: 1017354
User ID: SCANNER4
Filed Date/Time: 11-JUL-2003 09:34 AM

...e authority; or (8) any other event occurs that Mortgagee in
...nder the Note or this Mortgage; or (8) any other event occurs
...Mortgagee's collateral for Mortgagor's obligations under this
Mortgage or Mortgagee's ability to realize that value in a foreclosure; or if Mortgagor lets someone put a lien on or seize the Vessel.
FOR CORPORATE MORTGAGOR: If this Mortgage is given by a corporation, Mortgagee may also request full payment if shares of
Mortgagor's capital stock are sold or transferred to anyone who was not a guarantor of the obligation secured by this Mortgage at the
time the Note was signed, or if the corporation ceases doing business as a going concern or makes an assignment for benefit of
creditors, liquidates substantially all of its assets or files for dissolution.

**REMEDIES UPON DEFAULT:** If Mortgagor is in default under this Mortgage and/or under the Note, Mortgagee may do any one
or more of the following with or without previous notice to Mortgagor or demand for performance, except as may be required by
applicable law: (1) require that Mortgagor pay immediately the full unpaid balance of the Debt; (2) set off Mortgagor's liability
against or foreclose any funds of Mortgagor's held by Mortgagee in an account of general deposit or other personal property of
Mortgagor's held by Mortgagee other than IRA accounts, Keogh pension plan accounts or other retirement accounts; (3) demand that
Mortgagor assemble and deliver the Vessel to Mortgagee at such location as Mortgagee may reasonably require (however,
Mortgagor's delivery of the Vessel to Mortgagee will not relieve Mortgagor of Mortgagor's obligation to satisfy any deficiency which
may arise upon subsequent sale or other disposition of the Vessel); (4) lawfully enter any premises where the Vessel may be located
and repossess the Vessel, together with anything in or on the Vessel, with or without legal process or judicial decree and with or
without previous notice or demand for performance; (5) sell or otherwise dispose of the Vessel; (6) bring suit at law, in equity, or in
admiralty to foreclose Mortgagee's mortgage lien and/or recover judgment for any and all amounts due under the Note and this
Mortgage, and collect the same out of any and all property covered by this Mortgage; (7) pursue any other remedy provided to
Mortgagee under any applicable law; (8) refer this Mortgage to an attorney for collection or enforcement; (9) require Mortgagor to pay
collection, enforcement and court costs, including but not limited to all actual and reasonable costs of foreclosure, enforcement and
collection of any amount due and payable under this Mortgage and/or the Note and all actual and reasonable costs and expenses of
retaking, maintaining, repairing or rehabilitating, advertising, cleaning, storing or selling the Vessel, to the extent permitted by law. In
the case of a judgment, interest on the unpaid balance of the judgment will be payable at the applicable judgment rate or, if permitted
by law, at the interest rate applicable to the Debt, at Mortgagee's discretion.

**DISPOSITION OF VESSEL; APPLICATION OF PROCEEDS:** (1) If Mortgagee repossesses the Vessel without judicial process,
Mortgagee may, in Mortgagor's name or Mortgagee's name, at Mortgagee's discretion, sell, lease, charter, operate or otherwise use
the Vessel as Mortgagee may deem advisable, without being responsible for loss or damage, and Mortgagee may keep the Vessel at
Mortgagor's premises or elsewhere, at Mortgagor's expense. For this purpose and subject to any applicable state regulation,
Mortgagee and Mortgagee's agents are irrevocably appointed Mortgagor's true and lawful attorneys-in-fact to make all necessary
transfers of the Vessel, to pay, defend or obtain the release of all maritime liens, and to take all related actions in Mortgagor's name
and stead as may be necessary and appropriate to enforce Mortgagee's rights under this Mortgage or the Note. This power of attorney
shall not be affected by Mortgagor's disability. (2) The proceeds of sale or other disposition of the Vessel shall be applied in
accordance with applicable law. To the extent permitted by applicable law, any late charges, costs of retaking the Vessel, storage,
costs of sale including, but not limited to, cleaning, repairing and/or maintenance expenses, auctioneer's fee, sales commission, if any,
and advertising, insurance, allowable attorney's fees, collection costs, court costs, and any other necessary expenses will be paid first
from the proceeds of the sale or other disposition of the Vessel. Any surplus of proceeds of sale or disposition of the Vessel over the
amounts of such charges and expenses and amounts owed to Mortgagee shall be paid to Mortgagor to the extent that such surplus is
not required by law to be paid to other persons with liens on the Vessel. Mortgagor shall be liable for any deficiency.

**LATE CHARGES AND ATTORNEY'S FEES:** Mortgagor agrees to pay any late charges that become due under the Note secured
by this Mortgage, attorney fees and court costs as allowed in the Note.

**REASONABLE ATTORNEY FEES:** Whenever under this Mortgage or the Note, Mortgagee is entitled to payment by Mortgagor of
Mortgagee's reasonable fees incurred to enforce Mortgagee's collection rights against Mortgagor, it shall be presumed that 15% of the
full amount owed under the Note and this Mortgage shall be reasonable fees unless otherwise required by applicable law.

**NO WAIVER OF RIGHTS:** Mortgagee may delay in enforcing any of Mortgagee's rights without losing any of them.

**RECEIVER:** In any legal action, Mortgagee may have a receiver appointed for the Vessel and its earnings. Any receiver shall have
full rights and powers to use and operate the Vessel and to obtain a court decree ordering and directing the sale or other disposition of
the Vessel.

**USE OF THE VESSEL BY OWNER:** Unless and until Mortgagor become in default of this Mortgage, Mortgagor shall be
permitted to retain actual possession and use of the Vessel.

**TIME IS OF THE ESSENCE:** This means that all payments which are required must be made on the day due. There are no grace
periods provided in this Mortgage. If Mortgagor requires additional time to make a payment, Mortgagor understands that Mortgagor
must obtain authorization or approval for making a late payment from Mortgagee in writing in advance.

**ADDITIONAL SECURITY:** This Mortgage is given as additional security to secure payment of the Debt and performance of the
obligations hereunder and under the Note.

**INVALID PROVISIONS:** If any provision of this Mortgage cannot be enforced, the rest of the Mortgage will stay in effect.

**AMENDMENTS:** Any change in the terms of this Mortgage must be made in writing and signed by Mortgagee and Mortgagor.

Page 4 of 5

Document Type: MORTGAGE
Batch Number: 101525
Document ID: 1017354
User ID: SCANNER4
Filed Date/Time: 11-JUL-2003 09:34 AM

...ve and agrees to the terms and conditions of ...tely filled-in copy of this Mortgage before signing it. As of the day and year written at the beginning of this Mortgage, Mortgagor has executed this Mortgage under seal, or if a corporation or limited liability company, caused this Mortgage to be signed in the corporate name and sealed (if a corporate seal has been adopted) by its proper corporate officers or company members or agents who were duly authorized to do so on behalf of the corporation or company, or if by a partnership, caused this Agreement to be executed under seal by all of its general partners duly authorized on behalf of the partnership and their own behalf, individually, or if a trust, caused this Agreement to be executed under seal by all of its trustees on behalf of the trust pursuant to authority granted by the trust.

Mortgagor: _____          Mortgagor : _____

James S. McGown _____

**OTHER OWNERS - (ANY OTHER PERSON WHO IS AN OWNER OF THE VESSEL SIGNS HERE.) SUCH PERSON IS NOT PERSONALLY LIABLE TO PAY THE AMOUNT OWED BUT JOINS IN GIVING THIS MORTGAGE IN THE VESSEL.**

Witness: _____          Other Owner: _____

Witness: _____          Other Owner: _____

**ACKNOWLEDGMENT**

STATE OF: New York
COUNTY OF: New York
(Individual) Mortgagor HEREBY CERTIFY that on this __24__ day of __June__, __2003__, before me, a Notary Public, personally appeared, James S. McGown_ (known to me or satisfactorily proven) who acknowledged that he/she/they executed the foregoing document (First Preferred Ship Mortgage) of his/her/their own free act and deed for the uses and purposes set forth herein.

(Corporate) Mortgagor HEREBY CERTIFY that on this __24th__ day of __June__, _____, before me, a Notary Public, personally appeared, _____ who being duly sworn, deposed and said he/she/they is/are the _____ of _____ the corporation which is described in and which executed the foregoing instrument and by order of the Board of Directors for this corporation he/she signed his/her name hereto and acknowledged it to be the free act and deed of said corporation.

In witness whereof, Mortgagor hereunto set my hand and official seal.

_____
Notary Public

DON AOKI
Notary Public, State of New York
No. 01AO4985687
Qualified in New York County
My commission expires _____
Commission Expires August 26, 2005

DON AOKI
Notary Public, State of New York
No. 01AO4985687
Qualified in New York County
Commission Expires August 26, 2005

Page 5 of 5

INSTRUMENT NOTICE

On June 30, 2003 the National Vessel Documentation Center deployed a
new computer system that changed the recording system by scanning all
submissions into a database. There is no longer a requirement to submit
both an original and a copy of an instrument eligible for filing and recording.
Only instruments with original signature(s) are required. Duplicate copies of
bills of sale, mortgages, etc. are no longer required.

Enclosed is an exact copy of the filed and recorded instrument as it appears
in our database.

Requests for additional copy(ies) must be made in writing and reference the
batch and document ID number displayed in the upper left corner box of the
copy. A $4 certified copy fee is required. We accept payment by check or
credit card. A credit card authorization form may be found on line at:
http://www.uscg.mil/hq/g-m/vdoc/nvdc.htm

## **VERIFICATION**

I, Frank Severa, a Vice-President of Susquehanna Bank, hereby certify that I have read the foregoing Verified Complaint, that I know the contents thereof, and that it is true to my knowledge, except as to matters alleged on information and belief, and as to those matters I believe them to be true. I understand that, if any of the statements contained in the foregoing Verified Complaint are willfully false, I may be subject to punishment.

_____
Frank Severa

Dated: April 23, 2008

5

MEI 7304944v.1